## Scott, et al. v. Singleton, et al.

(Decided September 20, 1916.)

## Motion to dissolve injunction.

1. Injunction—Granting of—Absence of Presiding Judge.—By the provision of section 273, civil code of practice, jurisdiction to grant a mandatory injunction is conferred upon and confided to the circuit judge of the district, and in his absence to a judge of similar jurisdiction.

2. Injunction—Practice.—The proceeding to prepare for the holding of a primary election to fill vacancies in the offices of mayor and commissioners should have been by mandamus and not by injunction, when, as in this case, relief could not be had sooner than the date of the election.

3. Officers—Vacancies in Offices of Mayor and Commissioners—Constitutional Law.—Where a vacancy arises in the offices of mayor and commissioners in a second class city more than three months before the regular election, the appointees hold until the regular election, the provision of section 152 of the constitution controlling. The General Assembly may prescribe qualifications and fix the manner of filling vacancies, but may not extend the length of time appointees may hold as it attempted to do in enacting the charter for second class cities.

MOCQUOT & CAMPBELL for plaintiffs.

W. A. BERRY, HAL S. CORBETT and SANDERS E. CLAY for defendants

ORDER BY JUDGE CLARKE, OVERRULING MOTION FOR INJUNCTION.

Defendants have made a motion before me to dissolve a mandatory injunction granted in this action by the Hon. Bunk Gardner, Judge of the first judicial district, wherein defendant Gus G. Singleton, clerk of the McCracken county court, was directed to prepare ballots and make preparations for holding a primary election this year in the city of Paducah to nominate candidates for mayor and commissioners to fill the vacancies resulting from the judgment in the case of Burns v. Lackey, 171 Ky. 21.

In support of the motion defendants present three grounds, the first two of which raise questions of practice while the third covers the merits of the controversy, to-wit: (1) That the circuit judge granting the mandatory injunction did not have jurisdiction; (2) that mandamus, and not injunction, was the proper remedy; (3)

that the present incumbents who were appointed to fill
vacancies hold office until the next regular municipal
election to be held in the city of Paducah in November,
1917.

1.  Upon the first proposition little need be said be-
cause it is admitted that the regular circuit judge of the
district in which the controversy arose was absent from
the district and the State. By section 276 of the Civil Code
it is provided that no mandatory injunction shall be en-
tered by any clerk, county judge or two justices in any
case, and by section 273 of the Civil Code that an injunc-
tion may be granted by the court or any circuit judge in
the absence of the presiding judge. The jurisdiction to
grant a mandatory injunction is, therefore, by the code
conferred upon, and confined to, the circuit judge of the
district, and, in his absence, to a judge of similar juris-
diction.

2.  It is earnestly contended by counsel for defendants
that even if plaintiffs were entitled to relief, they have
mistaken their remedy, which should have been by man-
damus rather than injunction. But even where the distinc-
tion between a proceeding by mandamus and mandatory
injunction is strictly enforced, relief by mandatory in-
junction to enforce the performance by an officer of min-
isterial duties is not denied unless the relief by mandamus
is adequate and complete, and it is not necessary here to
draw the distinction between the writs, since the writ
of mandamus would have been totally inadequate in this
case to have afforded any relief. The McCracken circuit
court convenes in regular term September 25th, but it is
not the duty of the clerk of the county court to make
preparation for the primary election until ten days before
the date of the election, which is fixed by subsection 6 of
section 3235c of the Kentucky Statutes, "on the third
Saturday before the day for the regular election." From
which it will be seen that the duty did not devolve upon
the county clerk, and petitioners had no right to demand
performance of him, to prepare for the primary election
until ten days before the day for holding same. The writ,
therefore, could not be invoked until after his refusal
within ten days of the time for the primary election. The
rule is thus stated in 26 Cyc. 183:

"Conversely to the rule requiring a demand there
must have been a refusal on the part of respondents, and

there must have been an actual default; mandamus will not be granted in anticipation of an omission of duty."

Section 445 of the Code provides that notice of a motion for mandamus must be served on the party against whom the judgment is sought ten days before the motion is made, and since the county clerk, as before stated, is not required, in fact is prohibited by law, to prepare for the primary election until ten days before the day of the election, it will be readily seen that no relief could have been obtained by mandamus because a hearing could not have been had sooner than the date of the election, and it then, of course, would have been too late for the writ to be of any effect whatever. Therefore, this case presents just such conditions as render the mandatory injunction the only available and proper remedy. Potter v. Campbell, 155 Ky. 789.

3. The vacancies arose, and the appointments of the present incumbents were made, more than three months before the regular annual election of this year, at which presidential electors are to be elected.

Section 152 of the Constitution is as follows:

"Except as otherwise provided in this Constitution, vacancies in all elective offices shall be filled by election or appointment, as follows: If the unexpired term will end at the next succeeding annual election at which either city, town, county, district or state officers are to be elected, the office shall be filled by appointment for the remainder of the term. If the unexpired term will not end at the next succeeding annual election at which either city, town, county, district or state officers are to be elected, and if three months intervene before said succeeding annual election at which either city, town, county, district or state officers are to be elected, the office shall be filled by appointment until said election, and then said vacancy shall be filled by election for the remainder of the term. If three months do not intervene between the happening of said vacancy and the next succeeding election at which city, town, county, district or state officers are to be elected, the office shall be filled by appointment until the second succeeding annual election at which city, town, county, district or state officers are to be elected; and then, if any part of the term remains unexpired, the office shall be filled by election until the regular time for the election of officers to fill said offices. Vacancies in all offices for the state at large, or for districts larger than a

county, shall be filled by appointment of the Governor; all other appointments shall be made as may be prescribed by law. No person shall ever be appointed a member of the General Assembly, but vacancies therein may be filled at a special election, in such manner as may be provided by law.''

This section of the Constitution is mandatory, and except as otherwise provided in the Constitution, provides how, by whom and for how long vacancies in all elective offices must be filled. So, unless otherwise provided in the Constitution, the vacancies involved in this case were filled by appointment only until the regular annual election this fall when the unexpired term must be filled by election.

There is no other provision in the Constitution as to how or for what length of time vacancies may be filled by appointment except the latter part of section 160, which is as follows:

''The General Assembly shall prescribe the qualifications of all officers of towns and cities, the manner in, and causes for, which they may be removed from office, and how vacancies in such offices may be filled.''

This provision with reference to the point in issue has been construed by the Court of Appeals more than once, and in Shelley v. McCullough, 97 Ky. 164, and Todd v. Johnson, 99 Ky. 548, it has been held that section 160 of the Constitution is to be construed in connection with section 152, and that the provision of section 160, quoted above, conferred upon the General Assembly only the power to prescribe *how* vacancies in muncipal offices should be filled, and not the power to extend the length of time the appointees might serve. The General Assembly therefore had the power to prescribe the qualifications and fix the manner in which the vacancies should be filled, but did not have the power to extend the length of time the appointees should hold office beyond the time fixed by section 152 of the constitution, which under the circumstances here is until the next regular annual election at which State officers are to be elected; that is, until the election this year.

However, the legislature in enacting the charter for cities of the second class, to which Paducah belongs, attempted to provide that the appointees should hold office until the next regular *municipal* election, and as no municipal officers would be elected ordinarily in cities of

the second class this year, if the provisions of the charter are to prevail, the present incumbents by appointment would hold until the regular election in 1917, when municipal officers are to be elected in such cities; but the constitutional provision and not the legislative enactment must prevail, and the appointments could have been made only until the regular election this fall.

It is most earnestly contended however by the defendants that since section 160 of the Constitution conferred upon the General Assembly the power to prescribe the qualifications of municipal officers, that as the General Assembly by section 3235c, subsection 6 of the Kentucky Statutes provides that no one can be voted for or elected as mayor or city commissioner except those nominated at a primary held for the purpose, and that, as the charter makes no provision for such a primary except in years when municipal officers are to be elected, there is no authority for holding such a primary this year. It is true that there is no express provision in the charter of cities of the second class for holding a primary except in odd years, due to the assumption upon the part of the General Assembly that it had the power to provide, as it attempted to do, for filling vacancies by appointment until the next regular *municipal* election without regard to the length of time of the unexpired term. Such power the legislature did not have, and not having such power it could not by failing to provide for a primary to fill vacancies in the even years avoid the constitutional requirement for an election this year. And while there is no express provision for a primary in odd years, the provision in the charter, that no municipal officers can be voted for or elected except such as are nominated at a municipal primary, is tantamount to a provision that a primary must be held to nominate such officers whenever under the provisions of the Constitution they must be elected.

As an election must be held under section 152 of the Constitution this year for the unexpired terms in the offices of mayor and three commissioners, the provision of the charter that none can be elected except those nominated by a city primary must be construed to mean that a city primary, such as the charter provides for nominating such officers, will have to be held this year; for, to hold otherwise would give more force to the charter provision than to the Constitution.

It therefore results that the mandatory injunction was properly granted. and the motion to dissolve is over-ruled.

The chief justice and all of the other judges considered this motion with me and concur in this order.