## Culbertson v. Moore.

June 18, 1946.

Rehearing denied October 1, 1946.

Orie S. Ware, James C. Ware, and William O. Ware for appellant.

John L. Cushing, O. M. Rogers, and Earl Rodney King for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER

Reversing.

Covington, a city of the second class, operates under the City Manager form of government, as provided by KRS 89.390 to 89.990, inclusive. On November 2, 1943, Thomas P. Fitzpatrick was elected Mayor for a term of four years, commencing January 3, 1944, and ending the first Monday in January, 1948. At the same election, appellee, Robert F. Moore, William Beuttel, William Harris, and William F. Rolfes were elected Commissioners for terms of two years, commencing January 3, 1944, and ending January 7, 1946. The Mayor and four Commissioners constitute the Board of Commissioners. KRS 89.500. On the first day of their terms of office, pursuant to KRS 89.520(1), the Board elected William Harris, Mayor Pro Tem., and he served as such to December 27, 1945, when he tendered his resignation. The resignation was accepted immediately, and the Board thereupon elected appellee, Robert F. Moore, Mayor Pro Tem. At the general election held on November 6, 1945, Mayor Fitzpatrick was elected Sheriff of Kenton County; and on January 2, 1946, tendered his resignation as Mayor, effective as of the 5th day of January, 1946, at 12 o'clock

770

noon. This resignation was accepted at a meeting of the Board of Commissioners held on January 3, 1946. At the same election Mayor Fitzpatrick was elected Sheriff, appellant, R. E. Culbertson, appellee, Robert F. Moore, W. E. Hunter, and William F. Rolfes were elected City Commissioners for terms of two years, commencing January 7, 1946, and ending the first Monday in January, 1948. All qualified, and entered upon the duties of their offices January 7, 1946. At the first meeting of the Board of Commissioners held on January 7, 1946, an endeavor was made to elect a Mayor Pro Tem., but the vote resulted in a tie between appellant and appellee. At a regular meeting held on January 10, 1946, a second endeavor to elect a Mayor Pro Tem. resulted in a tie. The Commissioners persisted in the deadlock until March 19, 1946, when the Governor of Kentucky, by executive order, declared the office of Mayor Pro Tem. to be vacant; he thereupon issued a commission to appellant to fill the vacancy. Upon receipt of the commission, appellant took the oath of office, presented the commission to the constituted authorities of the City of Covington, and demanded the right to assume the duties of the office. At all times after December 27, 1945, appellee assumed to act as Mayor Pro Tem., claiming after January 7, 1946, that he held over under his election on December 27, 1945.

The petition in this action was filed April 22, 1946, by appellant, Culbertson, seeking a declaration that he is entitled to the office of Mayor Pro Tem., and praying for an injunction to prevent appellee from usurping the office. By agreement, the action was submitted to the Judges of both divisions of the Kenton Circuit Court, viz., Honorable Rodney G. Bryson and Honorable Joseph P. Goodenough. The presiding Chancellors concurring, an order was entered sustaining a demurrer to the petition, upon the ground that the Chief Executive of the Commonwealth was without power or authority to appoint a Mayor Pro Tem. for the City of Covington, under the circumstances described above.

In an exhaustive opinion, the Chancellors rejected the contention of appellee, which is reasserted in this Court, that no vacancy exists in the office of Mayor Pro Tem., because he is entitled to hold the office until his successor is elected by the Board of Commissioners; but,

since they were of opinion appellant was not entitled to the office, they held that he could not maintain the suit to oust appellee. Since we concur in the joint opinion of the Chancellors, in so far as it holds that appellee is not entitled to continue in the office of Mayor Pro Tem. beyond the term for which he was elected City Commissioner in November, 1943, we will adopt, as our own, that part of their opinion which deals with this question. It is as follows:

"The battleground of this controversy is the life of the Mayor Pro Tem. whom the Board elects. May a Board of Commissioners give life to a Mayor Pro Tem. beyond the term for which the occupant or holder was elected as Commissioner? We think not. Section 160 of the Constitution provides that members of the Legislature Boards, (Board of Commissioners) shall be elected for two years. Section 89.430 KRS places the tenure of office of the Commissioners at two years. Any Statute in contravention of Section 160 of the Constitution is unconstitutional. Section 89.520 KRS, sub-section 3, creating the office of Mayor Pro Tem. states:

" 'In case of the death, resignation or permanent disability of the mayor, the mayor pro tem shall act as mayor and receive his salary, under the official title of mayor pro tem, until the vacancy in the office of mayor is filled by an election ordered by the board of commissioners for that purpose. At that time the mayor pro tem, if his term as commissioner has not yet expired, shall resume his duties as commissioner.'

"From this language, it is argued that the office of Mayor Pro Tem. is extended, in case of the death or resignation of the Mayor, until the vacancy in the office of Mayor is filled by an election. In other words, the defendant firmly concludes that the Legislature gave life to the office of the Mayor Pro Tem. in the event of the death or resignation of the Mayor until such time as an election is ordered by the Board.

"The petition recites that Thomas P. Fitzpatrick was elected Mayor of Covington on November 6, 1945, for a term of four years, and that on January 3, 1946, he resigned. From this, it is argued that defendant was Mayor Pro Tem. and upon the resignation of Mayor Fitzpatrick, the defendant became the Acting Mayor of

the City 'until the vacancy in the office of Mayor is filled by an election ordered by the board of commissioners for that purpose.' Under the Statute the Mayor Pro Tem. never becomes Mayor. He acts as Mayor and receives his salary, under the official title of Mayor Pro Tem. until the vacancy in the office of Mayor is filled by an election. If we were willing to accept this construction of the Statute, we would be compelled to conclude that the Statute was unconstitutional because it offends Section 160 of the Constitution, but we do not and cannot concur in this construction of the Statute. Sub-section 3 of this section of the Statute must be read in connection with sub-section 1 which provides:

" 'The board of commissioners shall, at the beginning of its term of office, by a majority vote, elect one commissioner to act as mayor pro tem.'

"This quoted language is a mandatory expression of the Legislature imposing a duty upon the Board of Commissioners, at the beginning of its term of office, to elect a Mayor Pro Tem. For failure of the Board of Commissioners to comply with this mandate, mandamus or injunctive relief would lie. This Section gives the Board of Commissioners (elected in November, 1945) the authority to elect a Mayor Pro Tem. Construing this enactment of the Legislature as a whole, it is our judgment that the Legislature did not intend to give life to the office of Mayor Pro Tem. beyond the life of its holder, which is two years. To give sub-section 3 the meaning which defendant is contending for is to destroy the meaning and purpose of the Act. We cannot rivet our attention upon one section of the Statute to gain the intention of the Legislature.

"It is our considered conclusion that it was the intention of the Legislature to create the office of Mayor Pro Tem. whose holder, upon the resignation of the Mayor, would assume the duties of the Mayor until such time as the office of Mayor was filled by an election ordered by the Board, if that election was held during the holder's term of office, when he would resume his duties as Commissioner; that it was the duty of the Board (elected in November, 1945) at the beginning of its term of office to elect a Commissioner Mayor Pro Tem. The rule in this State is that a municipal officer possesses only such power, rights and authority as the

Legislature has expressly or impliedly conferred upon him. The Statute does not say, and it cannot reasonably be implied from the Statute, that the election of a Commissioner by the Board to the office of Mayor Pro Tem. prolongs his term of office beyond the term of two years for which he was elected by the people as Commissioner. The term of office of defendant as Commissioner expires, by mandate of the Constitution, on January 7, 1946. To construe the Statute in any other light would be the destruction of the mandates of the Statute that the Board of Commissioners shall, at the beginning of its term of office by a majority vote, elect one Commissioner to act as Mayor Pro Tem. It was the duty of the Board of Commissioners which took office January 7, 1946, to elect one of the Commissioners Mayor Pro Tem. The conduct of the Board whose term expired January 7, 1946, in electing one of its members Mayor Pro Tem. at a date prior to January 7, 1946, cannot and does not have the efficacy of constituting that Commissioner Mayor Pro Tem. beyond January 7, 1946. The language of sub-section 1 of this section of the Statute is plain and clear.

"In Scott v. Singleton, 171 Ky. 117, 188 S. W. 302, the Court pronounced this principle: That the General Assembly may prescribe qualifications and fix the matter of filling vacancies, but may not extend the length of time an appointee may hold the office. Sub-section 1 of Section 89.520 KRS prescribes the qualifications of the Mayor Pro Tem.: He must be a Commissioner who is elected for two years. When a Commissioner becomes Mayor Pro Tem., he does not lose his attributes as a Commissioner, and he cannot assume a new term of office.

"In Warren v. Blatt, 280 Ky. 185, 132 S. W. 2d 933, the question presented and the principle decided was comparable to the question presented in the case at bar. Blatt was elected a member of the Board of Trustees of the City of Southgate for a term of two years in November, 1937, and in January, 1938, he was elected Chairman of the Board, and in May, 1938 the City of Southgate became a fifth class city, and thereafter Blatt acted as its Mayor. It was Blatt's contention that, since he began serving as the Chief Executive of Southgate when he was elected Chairman of the Board in January, 1938, and

had acted as its Mayor since it became a city of the fifth class in May, 1938, he is entitled to hold this office until the next regular election for Mayor of the fifth class cities in 1941. If Blatt's position were upheld, it would mean he would serve for approximately two years beyond the term for which he was elected Trustee in 1937. The Court decided he was not entitled to hold office beyond the term for which he was elected.

"We are persuaded to conclude that the election of defendant to the office of Mayor Pro Tem. by the Commissioners prior to January, 1946 did not legally continue him as Mayor Pro Tem. beyond the term of office for which he was elected as Commissioner."

Having concluded that a vacancy exists in the office of Mayor Pro Tem., the remaining question for our determination is, whether the Governor of the Commonwealth has the power to fill the vacancy by appointment, under the provisions of KRS 63.190, which reads: "In every case where there is no other provision of law for the filling of a vacancy in any office, the vacancy shall be filled by appointment by the governor."

The precise question was decided by two members of this Court in Board of Trustees, etc., et al. v. Kercheval et al., 242 Ky. 1, 45 S. W. 2d 846. Whilst a majority of the Court did not sit in consideration of the case, the opinion later was approved by the Court and directed to be published. Rather than engage in repetitious disputation, we will refer the reader to that opinion, which expresses the reasoning by which we have arrived at our conclusion herein, viz., that the Governor of the Commonwealth has the authority to appoint a Mayor Pro Tem., under KRS 63.190 (formerly Carroll's Kentucky Statutes, Sec. 3758), when a vacancy exists in the office by reason of the Board of Commissioners failing to agree.

But it is insisted that the Kercheval case is not in point, because, it is contended, KRS 63.190 applies only to elective offices, whilst the office of Mayor Pro Tem. is appointive. It is further urged that, if it should be determined that it was the intention of the Legislature that KRS 63.190 should apply to appointive offices, it grants to the Governor a power in excess of that authorized by Section 152 of the Constitution. We deem it unnecessary

to discuss the scope of Section 152 of the Constitution, because Section 160 of that instrument specifically authorizes the General Assembly to prescribe the manner in which vacancies in both elective and appointive offices in the various cities of the Commonwealth may be filled; and it is pursuant to that Section of the Constitution, as well as Section 152, that the General Assembly enacted KRS 63.190, and, by broad language, made its provisions applicable to the filling of a vacancy in "any office."

The judgment is reversed, with directions that it be set aside and another be entered in conformity with this opinion.